## UNITED STATES DISTRICT COURT

## MIDDLE DISTRICT OF LOUISIANA

**ALLEN ODELL WOODS (#215279)**

**VERSUS**

**SETH SMITH, ET AL.**

**CIVIL ACTION**

**NO. 21-159-SDD-RLB**

### NOTICE

Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the United States District Court.

In accordance with 28 U.S.C. § 636(b)(1), you have fourteen (14) days after being served with the attached Report to file written objections to the proposed findings of fact, conclusions of law, and recommendations therein. Failure to file written objections to the proposed findings, conclusions, and recommendations within 14 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions of the Magistrate Judge which have been accepted by the District Court.

**ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT**.

Signed in Baton Rouge, Louisiana, on February 26, 2024.

 **RICHARD L. BOURGEOIS, JR.**
 **UNITED STATES MAGISTRATE JUDGE**

UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

ALLEN ODELL WOODS (#215279)

VERSUS

SETH SMITH, ET AL.

CIVIL ACTION

NO. 21-159-SDD-RLB

### MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

This matter is before the Court on the petitioner's application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. *See* R. Doc. 1. The State has filed an opposition to the petitioner's application. *See* R. Docs. 9-10. There is no need for oral argument or for an evidentiary hearing.

The petitioner, Allen Odell Woods, challenges his conviction, entered in 2017 in the Nineteenth Judicial District Court for the Parish of East Baton Rouge, State of Louisiana, on one count of home invasion, one count of intentional exposure to AIDS virus, and two counts of second degree rape. The petitioner contends that he was provided with ineffective assistance of counsel at trial.

**Factual Background**

The facts, as accurately summarized by the First Circuit, are as follows: In 2016, M.T. retired from her job as a public-school teacher after thirty years and began working part-time at a Baton Rouge alcohol and drug rehabilitation center. At the rehabilitation center, her duties included tutoring, checking in clients, and generally ensuring that their needs were met. M.T. became acquainted with the petitioner, who was a patient there, although she did not interact socially with him. At one point, M.T. offered to give a young woman named Christine a ride around Baton Rouge to prevent Christine from being exposed to drug dealers while walking around the city. When M.T. picked up Christine, another individual with whom M.T. was friends

from the rehabilitation center, Chris, was there, as well as the petitioner, who was friends with Christine. M.T. allowed all three to ride in her car. On a break during the drive, M.T. went home and allowed Christine, Chris, and the petitioner to smoke on her back patio.

Later, Christine gave the petitioner M.T.'s cell phone number, which "aggravated" M.T., and he began communicating with her. He also stopped by her home several times without invitation from M.T. and on one occasion mowed her lawn without M.T. requesting him to do so. From his chart at the rehabilitation center, M.T. was aware that the petitioner had HIV-Hepatitis C.

On August 22, 2016, at her home in East Baton Rouge Parish, M.T. prepared large, Thanksgiving-style dinners for her cousins, who were victims of the 2016 Baton Rouge flood, after she had worked from eight a.m. to five p.m. at the rehabilitation center. She put in a load of laundry in her laundry room, which was in her carport, and fell asleep on her sofa.

At 1:33 a.m. on the morning of August 23, 2016, M.T. awoke to find the petitioner standing in front of her. She had left her door unlocked. When she asked him what he was doing there, he replied that he was there to "sex" her. M.T. immediately said no and told him, "We're not going to do that," and the petitioner grabbed her arm and pulled her off the sofa. She repeatedly told him to stop and that "this was not consensual," remembering that his chart mentioned that he had HIV-Hepatitis C. The petitioner then started beating M.T. in the face and threatened to kill her. He continued to drag M.T., first by the arm and later by the throat, onto a rug in her dining room, where he performed oral sex on her and attempted to insert his penis into her vagina. M.T. testified that his penis did make contact with her vagina, but that it did not enter because he did not have an erection, although DNA evidence later confirmed the presence of the petitioner's sperm in M.T.'s vagina. At one point, he flipped M.T. over onto her knees, and she

attempted to flee, but the petitioner caught her by the throat and again beat her face repeatedly. She gave up fighting him because she did not want to be beaten again.

After the petitioner allowed M.T. to dress herself, she suggested that they go out onto her back patio to smoke. Eventually the petitioner fell asleep, and M.T. went back into her home, locked the door, and called 911.

The petitioner testified to the following in this case. He attended the rehabilitation center to recover from his addictions to cocaine and alcohol. While there, he became friends with Christine and met M.T. He never rode in M.T.'s car, and the car ride M.T. described must have occurred with somebody else. He added that he had been to M.T.'s house numerous times, and she always knew when he was coming over.

Petitioner claimed that on August 22, 2016, M.T. invited him to her home, and he arrived around 9:00 p.m. He stated that they had consensual sex that evening and that he did not strike M.T. According to the petitioner, they did argue, however, over bloody clothes and bloody rags that the petitioner discovered in M.T.'s bathroom under her sink. The clothes were Christine's but were covered in Chris's blood from a previous incident. The petitioner claimed that in June of 2016, Chris had become intoxicated and that M.T. and Christine had brought him back to M.T.'s house, where they placed Chris in M.T.'s shower and where Chris's blood was smeared. According to the petitioner, he cleaned up the bathroom and believed that M.T. would return the clothes to Christine and dispose of the rags. The petitioner claimed that M.T. had initiated a sexual relationship with him out of fear over the incident with Chris and Christine.

Petitioner further claimed that during this argument on either the evening of August 22, 2016, or the early morning hours of August 23, 2016, he threatened to tell the rehabilitation center about the incident and that M.T. had been reading their private files, and also accused her

of being a witch because she had retained the bloody clothes and rags. *See State v. Woods,* 18-0439 (La. App. 1 Cir. 12/21/189), 2018 WL 6718517.

## Procedural History

Petitioner was charged by amended bill of information with one count of home invasion (count I), one count of intentional exposure to AIDS virus (count II), and two counts of second-degree rape, (counts III and IV). He pled not guilty on all counts. After a jury trial, petitioner was found guilty as charged on all four counts. On count I, he was sentenced to twenty-five years at hard labor. On count II, he was sentenced to ten years at hard labor. On counts III and IV, for each count, he was sentenced to forty years at hard labor without the benefit of probation, parole, or suspension of sentence. The trial court ordered that the sentences on counts I, III, and IV would run concurrently with each other, but that the sentence on count II would run consecutively to the other sentences.

Petitioner appealed and his conviction and sentence were affirmed by the First Circuit Court of Appeal on December 21, 2018. The petitioner sought writs which were denied by the Louisiana Supreme Court on April 22, 2019.

On May 1, 2019, the petitioner filed an Application for Post-Conviction Relief. The trial court denied the application on February 14, 2020.

The petitioner then sought writs in the First Circuit Court of Appeal and the Louisiana Supreme Court which were denied on August 30, 2020, and February 17, 2021, respectively. The instant Petition for Writ of Habeas Corpus was filed by the petitioner on March 14, 2021.

## Standard of Review

The standard of review in this Court is that set forth in 28 U.S.C. § 2254(d). Pursuant to that statute, an application for a writ of habeas corpus shall not be granted with respect to any

claim that a state court has adjudicated on the merits unless the adjudication has "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."

Relief is authorized if a state court has arrived at a conclusion contrary to that reached by the Supreme Court on a question of law or if the state court has decided a case differently than the Supreme Court on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 413 (2000). Relief is also available if the state court has identified the correct legal principle but has unreasonably applied that principle to the facts of the petitioner's case or has reached a decision based on an unreasonable factual determination. *See Montoya v. Johnson*, 226 F.3d 399, 404 (5th Cir. 2000). Mere error by the state court or mere disagreement on the part of this Court with the state court determination is not enough; the standard is one of objective reasonableness. *Id*. *See also Williams v. Taylor*, *supra*, 529 U.S. at 409 ("[A] federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable"). State court determinations of underlying factual issues are presumed to be correct, and the petitioner has the burden to rebut that presumption with clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

The State asserts that a deferential review of the state court proceedings and findings, as mandated by 28 U.S.C. § 2254(d) and (e), compels the conclusion that all the petitioner's claims must be rejected. As discussed below, the Court finds that the petitioner's claims are without merit.

**Substantive Review**

**Ineffective Assistance of Counsel**

A habeas petitioner who asserts that he was provided with ineffective assistance of counsel must affirmatively demonstrate (1) that his counsel's performance was "deficient", *i.e.*, that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the petitioner by the Sixth Amendment; and (2) that the deficient performance prejudiced his defense, *i.e.*, that counsel's errors were so serious as to deprive the petitioner of a fair trial, a trial in which the result is reliable. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). The petitioner must make both showings in order to obtain habeas relief based upon the alleged ineffective assistance of counsel. *Id*.

**Claim 1: Failure to Raise *Brady* Violations**

Petitioner asserts that his counsel was ineffective for failing to raise a *Brady* violation with respect to missing cell phone transcripts and fingerprint analysis reports and suppressed medical records. The prosecution's suppression of material evidence favorable to the accused violates due process regardless of whether or not the prosecution acted in good faith or bad faith in failing to make a timely disclosure of the evidence. *Brady v. Maryland,* 373 U.S. 83, 87 (1963); *Jones v. Butler,* 864 F.2d 348, 354 (5th Cir. 1988). To be entitled to federal habeas corpus relief, the petitioner must show: (1) the prosecution suppressed evidence, (2) the suppressed evidence was "favorable to the accused," and (3) the evidence was "material" either to guilt or punishment. *Brogdon v. Butler,* 790 F.2d 1164, 1167 (5th Cir. 1986), *cert. denied,* 481 U.S. 1042, 107 S.Ct. 3245 (1987). Evidence that is "favorable to the accused" includes evidence that tends directly to exculpate the accused as well as evidence that impeaches the testimony of a witness where the reliability or credibility of that witness may be determinative of guilt or innocence.

*Giglio v. United States,* 405 U.S. 150 (1972); *Porretto v. Stalder,* 834 F.2d 461, 464 (5th Cir. 1987). The touchstone of materiality is a "reasonable probability" of a different result. *Kyles v. Whitley,* 514 U.S. 419 (1995). "The question is not whether the defendant would more likely than not have received a different verdict with the evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence." *Id.*

*Cellphone Transcripts*

Petitioner asserts that there was a telephone conversation between himself and the victim during which she invited him to her home. There is nothing in the record to indicate that there was a telephone conversation between the petitioner and the victim.

During the probable cause hearing it was noted that there was a *text message* conversation between the two, and that the victim's cell phone data had been downloaded and placed in evidence. *See* R. Doc. 11-20, p. 45. At a status conference, counsel for petitioner indicated that they were seeking the entirety of the victim's cell phone records so he and the petitioner could review them for any potentially helpful communications. *See* R. Doc. 11-21, p. 3-4. The matter came before the trial court again during a hearing on the petitioner's discovery motion. The State argued that all communications between the petitioner and the victim had been produced. Counsel for petitioner was requesting a "phone dump," and the State objected to protect the victim's privacy while also offering to search requested words or phrases for the petitioner. The trial judge concluded that provision of the communications between the petitioner and the victim were sufficient and denied the motion seeking a "phone dump."

Petitioner asserts that a cell phone conversation recording between himself and the victim would have revealed that the victim invited the petitioner to her home on the day in question. At trial, the victim testified that she and the petitioner exchanged *text messages*. The victim also

testified that she did not invite the petitioner to her home on any day after the first and only time when he was driven to her house with two other residents of the rehab facility. *See* R. Doc. 11-23, p. 31-34 and R. Doc. 11-26, p. 15. The prosecutor again stated at trial that any communication between the petitioner and the victim by text had been provided to the defense. *See* R. Doc. 11-26, p. 22. At trial, the petitioner testified that, on the day in question, the victim invited him to her home *in person*, *not via phone*. *See* R. Doc. 11-28, p. 29. As such, there is nothing in the record to suggest that favorable evidence, in the form of a record of a telephone conversation between the petitioner and the victim, was suppressed.

*Fingerprint Analysis Reports*

Petitioner asserts that his counsel should have sought fingerprint analysis reports for the back door since they would have shown an absence of the petitioner's fingerprints, which would have substantiated his claim that the victim let him in and that he did not open the door himself. Petitioner also asserts his counsel should have sought fingerprint analysis reports for the coins found inside the sock on which the victim's blood was found. Petitioner contends that whoever put the coins in the sock used it as a weapon and caused the injuries to the petitioner's face.

There were no fingerprint analysis reports since the crime scene investigator was not asked to fingerprint anything in the victim's residence. *See* R. Doc. 11-23, p. 6. As such, no fingerprint analysis reports were suppressed as none existed.

To the extent the petitioner is asserting his counsel was ineffective for failing to seek fingerprint testing of the door and coins, he makes no showing that fingerprint tests would have revealed results favorable to his defense. He has not demonstrated that the evidence did not contain his fingerprints. He has not demonstrated that the lack of fingerprints on the evidence would have raised reasonable doubt as to whether he raped the victim. Petitioner was convicted

based on the testimony of the State witnesses, despite petitioner's testimony to the contrary. Beyond mere speculation, petitioner has failed to establish that fingerprint evidence would have created doubt about his guilt. As such, the petitioner has not shown any prejudice from his counsel failure to have the door and coins tested for fingerprints.

*Suppressed Medical Records*

Petitioner mentions "medical records from Rehab Center suppressed" without further elaboration. In any case, these were the petitioner's own medical records. The prosecution has no obligation to produce evidence or information already known to the defendant, or that could be obtained through the defendant's exercise of reasonable diligence. *Brown v. Cain,* 104 F.3d 744, (5th Cir. 1997). Evidence is not "suppressed" if the defendant either knew, or should have known of the essential facts permitting him to take advantage of any exculpatory evidence. *Rector v. Johnson,* 120 F.3d 551, 560 (5th Cir. 1997); *West v. Johnson,* 92 F.3d 1385, 1399 (5th Cir. 1996). As such, there was no *Brady* violation for petitioner's counsel to raise.

To the extent the petitioner asserts that his counsel was ineffective for failing to obtain these medical records and introduce them at trial, the decision not to introduce these records was a reasonable trial strategy where the petitioner asserted that he was not HIV positive and the records likely stated otherwise. Petitioner has failed to show that counsel's decision was not sound trial strategy.

**Claim 2: Failure to Locate Witnesses**

Petitioner asserts that his counsel was ineffective for failing to locate two witnesses – Christine Burris and "Chris," who were both rehab clients assigned to the victim. Petitioner asserts that these witnesses were knowledgeable of the relationship between the petitioner and the victim and the violation of the rehab center rules prohibiting outside contact with clients.

To prevail on an ineffective assistance claim based upon uncalled witnesses, the petitioner must name the witness, demonstrate that the witness was available to testify and would have done so, set out the content of the witness's proposed testimony, and show that the testimony would have been favorable to a particular defense. *Day v. Quarterman*, 566 F.3d 527, 538 (5th Cir. 2009). Claims of uncalled witnesses are disfavored, however, especially if the claim is unsupported by evidence indicating the witness' willingness to testify and the substance of the proposed testimony. *See Harrison v. Quarterman*, 496 F.3d 419, 428 (5th Cir. 2007).

As noted by the appellate court, counsel for the petitioner did attempt to locate Christine and Chris but was unable to do so because the rehab center did not have any contact information for these persons. Even if Christine and Chris had been located, there is nothing in the record that indicates that either would have been willing to testify or that their testimony would have been favorable to the defense presented of a consensual sexual encounter. Neither Christine nor Chris was present on the night in question. Nor does petitioner assert that they had knowledge of any alleged prior consensual sexual encounters between he and the victim. Petitioner alleges only that Christine and Chris and had knowledge of the victim's outside interactions with clients, which both the victim and the petitioner testified to. As such, the cumulative testimony of Christine and Chris would not have offered anything in support of the petitioner's defense. As such, the plaintiff has not shown that his counsel was ineffective for failing to locate and call Christine and Chris as witnesses.

### Claim 3: Failure to Impeach Witness and Challenge Perjured Testimony

Petitioner asserts that his counsel failed to impeach the victim with regards to the statements she made during the 911 call on the night in question and the statements made at trial. On direct examination the victim testified that she did not remember what she said when she

called 911 until the Friday before trial when she heard the recording of the 911 call. Prior to that time, she had no recollection of the details of the call. *See* R. Doc. 11-24, p. 16.

On cross-examination, the victim admitted that some of the statements she made to the 911 operator were not true – that the petitioner must have followed her home and that she was a case manager at the rehab facility. *See* R. Doc. 11-26, p. 11-12. The victim testified that she didn't know why she didn't tell the truth during the 911 call and that it was possibly due to her mental state at the time. At the time she made the call she felt like she was floating. The events felt surreal, and she did not remember making the call. *See* R. Doc. 11-26, p. 12 and 25. Once she calmed down, she was able to accurately relay the facts to the police and in her testimony at trial. *See* R. Doc. 11-26, p. 26-27. As such, petitioner's trial counsel did question the victim regarding the inaccuracies in her statements to 911.

Petitioner also asserts that his counsel failed to object to the prosecution's presentation of perjured testimony by the victim that post-traumatic stress caused her to lie during the 911 call. It is a violation of the Fifth and Fourteenth Amendments to the United States Constitution for the prosecution to knowingly use perjured testimony. *Napue v. Illinois,* 360 U.S. 264, 269, 79 S.Ct. 1173 (1959). In order to establish a *Napue* violation, the petitioner must show (1) the statements in question are actually false; (2) the prosecution knew that the statements were false; and (3) the statements were material. *United States v. Haese,* 162 F. 3d 359, 365 (5th Cir. 1998).

The petitioner has not shown that the victim's statements at trial were actually false. According to the victim, she had just been violently beaten and raped and was in such a state that she does not know what she told the 911 operator or the police in the early morning hours following the incident. There is nothing in the record that indicates that this information is false. Even assuming the victim's statements were false, the petitioner has not shown that the

prosecution had any knowledge of the same. As such, there was no basis on which his counsel could object to use of perjured testimony. Additionally, the credibility of witnesses and weight to be given to their testimony are generally questions within the province of the jury. *United States v. Millsaps,* 157 F.3d 989, 994 (5th Cir. 1998). In the instant matter, the jury clearly found the victim to be credible and gave great weight to her testimony. Petitioner has failed to show his counsel was ineffective for failing to raise a meritless objection.

### Claim 4: Failure to Assert Indictment Defectiveness

Petitioner asserts that his counsel was ineffective for failing to raise defects in the indictment and challenges the sufficiency of the evidence. He asserts that the victim was capable of resisting the act, that the act wasn't committed because he could not get an erection, that the act was consensual as he was invited into the victim's home, and his medical records do not show that he has HIV.

The First Circuit reviewed the standard for sufficiency of evidence set forth in *Jackson v. Virginia*, 433 U.S. 307 (1979), and found that any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt:

> The standard of review for sufficiency of the evidence to uphold a conviction is whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could conclude the state proved the essential elements of the crime and the defendant's identity as the perpetrator of that crime beyond a reasonable doubt. In conducting this review, we also must be expressly mindful of Louisiana's circumstantial evidence test, which states in part, "assuming every fact to be proved that the evidence tends to prove," in order to convict, every reasonable hypothesis of innocence is excluded.
>
> When a conviction is based on both direct and circumstantial evidence, the reviewing court must resolve any conflict in the direct evidence by viewing that evidence in the light most favorable to the prosecution. When the direct evidence is thus viewed, the facts established by the direct evidence and the facts reasonably inferred from the circumstantial evidence must be sufficient for a rational juror to conclude beyond a reasonable doubt that the defendant was guilty of every essential element of the crime.

We note that the defendant claims that the testimony of "two state witnesses" contained "variances" such that the evidence was insufficient to convict him. It is unclear which two witnesses to whom the defendant is referring, but after a thorough review of the record, we find that the evidence supports the guilty verdicts.

We are convinced that viewing the evidence in the light most favorable to the state, any rational trier of fact could have found beyond a reasonable doubt, and to the exclusion of every reasonable hypothesis of innocence, that the defendant was guilty of intentional exposure to HIV, home invasion, and two counts of second degree rape. The verdicts rendered in this case indicate the jury rejected the defendant's claim of consensual sex. When a case involves circumstantial evidence, and the jury reasonably rejects the hypothesis of innocence presented by the defendant's own testimony, that hypothesis falls, and the defendant is guilty unless there is another hypothesis that raises a reasonable doubt. No such hypothesis exists in the instant case. Additionally, the verdict indicates the jury rejected the defendant's testimony, accepted the testimony offered against him, and rejected his attempts to discredit that testimony. This court will not assess the credibility of witnesses or reweigh the evidence to overturn a fact finder's determination of guilt. The testimony of the victim alone is sufficient to prove the elements of the offense. The trier of fact may accept or reject, in whole or in part, the testimony of any witness. Moreover, when there is conflicting testimony about factual matters, the resolution of which depends upon a determination of the credibility of the witnesses, the matter is one of the weight of the evidence, not its sufficiency. Further, in reviewing the evidence, we cannot say that the jury's determination was irrational under the facts and circumstances presented to them. An appellate court errs by substituting its appreciation of the evidence and credibility of witnesses for that of the fact finder and thereby overturning a verdict on the basis of an exculpatory hypothesis of innocence presented to, and rationally rejected by, the jury.

…the defendant contends that "perjury" was used to convict him. First, he claims that the prosecutor knowingly allowed the victim to testify falsely that he had HIV. He claims that his medical records show otherwise….a review of the record reveals that at trial, the prosecutor entered redacted medical records into evidence. These records clearly state that the defendant had HIV, viral hepatitis C, and "chronic type B viral hepatitis."

…the defendant lists a number of alleged inaccuracies regarding the victim's account of the events of August 23, 2016. He claims that the police's DNA swab and fingerprinting of the victim's door establishes that only the victim's DNA and fingerprints were on the door, which in turn suggests that she voluntarily opened the door for him. The record flatly contradicts these contentions. Officer Blanchard testified that he did not fingerprint anything in the victim's home…The defendant also claims that cell phone records from the victim's phone establish that the victim called him to invite him to her home. The trial court, however, held that the state's production of the text messages between the victim and the defendant was sufficient, and a full cell "phone dump" was not needed.

> The defendant points out that Angela Shaw Ellzey, a sexual assault nurse examiner who examined the victim, testified that she found no cuts, lacerations, vaginal injuries, bumps on her head, or bruising on the neck of the victim. He fails to mention, however, that Ms. Ellzey also testified that she observed the following injuries on the victim: bruising on her right eyelid and cheek consistent with the victim's account of the defendant beating her in the head; an abrasion on her left elbow; bruising on her left ring finger consistent with a defense mechanism of raising the hands and forearms; two bruises on her right lower leg consistent with someone pushing her legs apart; a bruise on her left lower knee area; and a bruise on her left foot. Additionally, the elbow bruising and the lower leg bruising were consistent with the victim's account of being flipped from her back into a prone position.
>
> The defendant claims that the victim self-inflicted her black eye with an ankle sock full of coins to prevent him from disclosing the alleged incident with Chris and Christine when the victim supposedly brought Chris back to her home after he was intoxicated, which would have been a violation of the rehabilitation center's rules regarding interactions between workers and patients.
>
> To the extent the defendant claims that the testimony was "perjury," the jury's decision to accept the testimony of the victim rather than that of the defendant is a matter regarding her credibility, which this court will not overturn.

*State v. Woods,* 18-0439 (La. App. 1 Cir. 12/21/189), 2018 WL 6718517 (*internal citations omitted*). The habeas court must defer to the trial court's findings on issues of conflicting testimony and the weight of the evidence, resolving all conflicting inferences and credibility choices in favor of the verdict and may not substitute its judgment for that of the factfinder's. *Ramirez v. Dretke*, 398 F.3d 691, 695 (5th Cir. 2005); *Alexander v. McCotter*, 775 F.2d 595, 598 (5th Cir. 1985). Thus, under the standards of *Jackson* and § 2254, this Court's review on sufficiency of evidence claims is "twice-deferential." *Parker v. Matthews*, 567 U.S. 37, 43 (2012). The First Circuit's decision on sufficiency of the evidence was neither contrary to, nor an unreasonable application of federal law.

As to the indictment itself, "the sufficiency of a state indictment is not a matter of federal habeas relief unless it can be shown that the state indictment is so defective that it deprives the state court of jurisdiction." *Wood v. Quarterman*, 503 F.3d 408, 412 (5th Cir. 2007). A charging

document is sufficient for constitutional purposes if it both informs a defendant of the accusation against him, so as to enable him to prepare his defense, and affords him protection against double jeopardy. *United States v. Ramos*, 537 F.3d 439, 459 (5th Cir. 2008). *See also* the Official Comments to La. Code Crim. P. art. 473, which note that a primary concern of a charging document is "protection of the defendant's constitutional right to be informed of the nature and cause of the accusation against him, and with requiring a description of the injured party ... adequate to support a plea of double jeopardy." Article 464 of the Louisiana Code of Criminal Procedure provides that "[t]he indictment shall be a plain, concise, and definite written statement of the essential facts constituting the offense charged." The indictment shall cite the relevant statute that the defendant is alleged to have violated, and it is not essential that the date, time or place of the offense be stated with particularity. La. Code Crim. P. arts. 468-69. In addition, words and phrases utilized in the indictment are given either their usual meaning or, where appropriate, their legal meaning. La. Code Crim. P. art. 477. Finally, a bill of particulars may be requested by either the defendant or the trial court to provide "more specifically the nature and cause of the charge." La. Code Crim. P. art. 484. *See also State v. Liner*, 397 So.2d 121 (La. 1979) (recognizing the validity of Louisiana's short form indictment).

      A review of the Indictment shows that is complies with the foregoing requirements. As such, petitioner's counsel was not ineffective for failing to raise meritless objections to the Indictment.

### Claim 5: Failure to Investigate

      The petitioner asserts that his trial counsel was ineffective due to his failure to investigate at the rehab center which would have led to favorable witnesses regarding sexual conduct and medical records. "[C]ounsel has a duty to make reasonable investigations or to make a

reasonable decision that makes particular investigations unnecessary." *Strickland,* 466 U.S. at 691. "A defendant who alleges a failure to investigate on the part of his counsel must allege with specificity what the investigation would have revealed and how it would have altered the outcome of the trial." *United States v. Green,* 882 F.2d 999, 1003 (5th Cir. 1989).

Petitioner has not stated with specificity what an investigation at the rehab center would have revealed. As previously discussed, counsel for petitioner did attempt to locate Christine and Chris but could not because the rehab center did not maintain their contact information. Regardless, as previously discussed, their testimony would not have altered the outcome of the trial. Additionally, if petitioner is referring to his own medical records the prosecution, as noted above, entered medical records into evidence showing that the petitioner had HIV.

Petitioner additionally alleges that his counsel was ineffective for failing to raise issues of prejudice due to race since he is black, and the victim was white. Nothing in the record points to the defendant as a special target for racial prejudice. Nor has the petitioner raised such a claim in the state courts.

Petitioner further asserts that his counsel altogether failed to provide meaningful representation such that under the rule of *United States v. Cronic,* 466 U.S. 648 (1984), he need not show *Strickland* prejudice. Petitioner's reliance on *Cronic* is misplaced. "When [the Supreme Court] spoke in *Cronic* of the possibility of presuming prejudice based on an attorney's failure to test the prosecution's case, [the Court] indicated that the attorney's failure must be complete." *Bell v. Cone,* 535 U.S. 685, 696–97 (2002). Here counsel represented petitioner throughout the proceedings below. During trial, counsel lodged objections, examined witnesses, and argued the case to the jury. Any deficiency in the quality of this representation plainly sounds under *Strickland* rather than *Cronic. See Gochicoa v. Johnson,* 238 F.3d 278, 284–85 (5th Cir.2000)

("When the defendant complains of errors, omissions, or strategic blunders, prejudice is not presumed[ ]...."). Petitioner has not shown *Strickland* prejudice. Petitioner has not alleged, nor does the record reveal, that counsel's representation was so deficient that the petitioner was deprived of a fair trial. As such, this claim is without merit.

## Motion to Amend

After filing the instant petition, petitioner filed a second application for post-conviction relief seeking DNA testing. His application was denied by the trial court as were his subsequent writ applications. Petitioner now seeks to amend his habeas petition to add this claim.

An amended petition would be untimely unless it relates back to the original Petition. An amended pleading relates back to the date of the original pleading when "the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out – or attempted to be set out – in the original pleading[.]" Federal Rule of Civil Procedure 15(c)(1)(B). This rule applies in habeas proceedings, as long as the amended petition does not assert "a new ground for relief supported by facts that differ in both time and type from those the original pleading set forth." *United States v. Gonzalez*, 592 F.3d 675, 679 (5th Cir. 2009) (quoting *Mayle v. Felix*, 545 U.S. 644, 651 (2005)). It is not enough that the proposed amendment merely relates to the same, trial, conviction, or sentence. *Mayle*, 545 U.S at 656-64; *see also Figueredo-Quintero v. McCain*, 766 F. App'x. 93, 97 (5th Cir. 2019).

The claim the petitioner seeks to add is markedly different from his claims of ineffective assistance of counsel. Seeking to have his DNA retested is not the same type of claims set out in his original petition. As such, the amended petition would be untimely as it would not relate back to the original Petition. Accordingly, the Motion to Amend (R. Doc. 21) should be denied.

Petitioner would still have the option of seeking permission from the Fifth Circuit Court of Appeals to file a successive habeas petition.

## Certificate of Appealability

Should the petitioner pursue an appeal, a certificate of appealability should also be denied. An appeal may not be taken to the court of appeals from a final order in a habeas corpus proceeding "unless a circuit justice or judge issues a certificate of appealability." 28 U.S.C. § 2253(c)(1)(A). Although the petitioner has not yet filed a Notice of Appeal herein, the Court may address whether he would be entitled to a certificate of appealability. *See Alexander v. Johnson*, 211 F.3d 895, 898 (5th Cir. 2000). A certificate of appealability may issue only if a habeas petitioner has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2).

In cases where the Court has rejected a petitioner's constitutional claims on substantive grounds, a petitioner must demonstrate that "jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Pippin v. Dretke*, 434 F.3d 782, 787 (5th Cir. 2005), *quoting Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In the instant case, the Court finds that reasonable jurists would not debate the denial of petitioner's application or the correctness of the substantive ruling. Accordingly, it is appropriate that, in the event that the petitioner seeks to pursue an appeal in this case, a certificate of appealability should be denied.

## **RECOMMENDATION**

It is recommended that the petitioner's application for habeas corpus relief be denied and that this proceeding be dismissed with prejudice. It is further recommended that in the event the

petitioner pursues an appeal in this case, a certificate of appealability be denied. It is further recommended that the petitioner's Motion to Amend (R. Doc. 21) be denied.

Signed in Baton Rouge, Louisiana, on February 26, 2024.

**RICHARD L. BOURGEOIS, JR.**
**UNITED STATES MAGISTRATE JUDGE**